Hiram Ward <i>vs.</i> Eli Barnard.

An act of the general assembly, releasing a debtor, imprisoned on execution, at the suit of a party, from his imprisonment, and freeing his body from arrest for a limited time, is not authorized by the constitution of this state—does not partake of the character of a *law,* and is null and void.

A departure from the liberties of the prison, under colour of such an act, is an escape.

THIS was an action of debt, on jail bond. The commitment of the defendant to the common jail in Chittenden county, upon an execution in favour of the plaintiff against him, was alleged to have been on the 12*th day of May,* 1817; the execution of the said bond, on the *same day:* an escape from the liberties of said jail, (which was the breach assigned,) on the 1*st day of November,* 1819, and the assignment of said bond by the sheriff to the plaintiff, on the 30*th day of August,* 1822.

To the plaintiff's declaration, the defendant pleaded the following plea in bar:—*Actio non*—because, he says, that, heretofore, to wit. on the 11th day of November, 1819, after the execution of the writing obligatory, described in the plaintiff's declaration and before the escape of the said Eli Barnard, as in the same declaration alleged, by a certain act of the general assembly of the state of Vermont, entitled "An act, for the relief of Eli Barnard," passed on the day and year last aforesaid, it was enacted, "that the body of Eli Barnard, of Burlington, in the county of Chittenden, be freed from imprisonment, and arrest, on any civil process, by, or under the authority of this state, upon all contracts, covenants, debts, or judgments, now in existence against him, for the term of five years, from and after the passing this act."

And that the said Eli Barnard, on leaving a copy of this act, certified by the secretary of state, with the keeper of the jail in Burlington, may depart the liberties of the said jail; and that such departure shall not be deemed an escape, to charge the jailor, or the said Eli Barnard, or his bail. And any sheriff, or other officer, who may, at any time during the said term of five

16

years, arrest the body of the said Eli Barnard, or have the same in custody, on any civil process aforesaid, shall, on having a copy of this act, certified as aforesaid, shown to him, forthwith discharge the said Eli Barnard from such arrest, or custody; as by the record of the same act, remaining in the office of the secretary of state of the state of Vermont, may more fully and at large appear. And the said Eli Barnard avers, that he is the same Eli Barnard named in the act aforesaid, and was, on the day and year last aforesaid, a prisoner within the liberties of the jail in Burlington, in the county of Chittenden, upon the execution described in the plaintiff's declaration; and that he did, on the fifteenth day of November, A. D. 1819, and before the departure of him, the said Eli Barnard, from the liberties of said jail, leave a copy of the said act, certified by the secretary of state, with the keeper of said jail in Burlington, aforesaid; and afterwards, to wit, on the day and year last aforesaid, did depart the liberties of said jail, and go at large. All which the said Eli is ready to verify; without this, that on the *first* day of *November, A. D.* 1819, the said Eli Barnard did escape from the said prison, and from the liberties thereof, and go at large. Wherefore, the said Eli prays judgment, if the said Hiram ought to have, or maintain his aforesaid action thereof, against him, and for his costs.

To this plea, there was a demurrer, and joinder in demurrer. Special causes of demurrer were also set down, but they were abandoned in the argument.

*Adams,* in support of the demurrer. *The act set forth in the plea in bar, is retrospective.* It is essential to the character of a law, that it should look only to the future; whence, it becomes a part of the definition of a law, that it is a rule *prescribed.* By the constitution of the United States, the several states are prohibited from passing any *ex post facto* law. This prohibition was not expressed, to prevent the exercise of any power, which the states could constitutionally exercise; for clearly they had not the power; but from abundant caution, to prevent the exercise of a power which they did *not* possess. What *ex post facto laws* are to crimes, *retrospective* laws are to contracts, and the legislature has the same powers relative to both. Legislatures sometimes pass acts, having a bearing upon events that are passed; but it may be remembered, that our legislatures are vested with other powers than those of legislators, and a distinction may be properly made between *acts* and *laws.* An opinion, relative to the past, is judicial in its nature, and does not partake of the character of a law.—3 *Dallas R.* 397.

The act set forth, is an attempt to legislate in an individual case. The powers of the legislature result from the objects for which they are constituted; to promote the happiness and secure the rights, of the whole community. This can be effected, only, by establishing general rules of conduct, equally applicable to every person. It is impossible that the legislature should

*Chittenden,*
December,
1825.

Ward
*vs.*
Barnard.

legislate for every individual, and it would be attended with consequences the most injurious, if they could. That which cannot be done for all, cannot be done, with propriety, for any. If the legislature have power to select any individual, as the object of particular legislation, and exempt him from obligations to which all others are subject, it may be the instrument of the grossest favouritism; or, in times of political excitement, of the most cruel persecution. It is in vain to say, that legislators will not abuse their authority. The history of past times unfortunately shows, that legislators are but men, fallible men—that, elated with their brief authority, they sometimes *feel power, and forget right.* The experience of ages has taught us the salutary lesson, that legislatures need the restraint of some general rules; and, in this enlightened age, it would not evince sound policy to intrust to them a power, which could only be productive of evil consequences.

Legislatures, as the general agents of the whole mass of the people, make many regulations, particularly affecting individuals; grant acts of incorporation, establish turnpikes, &c.; give exclusive privileges as the reward of invention: but these are not done by virtue of their powers of legislation, and might as well be done by various other tribunals.

It is inconsistent with correct notions of liberty, that any one body of men should be invested with the power of suspending the operation of the laws. In the contests for power between the prince and parliament, this dispensing power has been claimed as a branch of the divine right of kings; and, in the time of *Henry the Eighth*, might have been exercised with impunity. But in a government of laws, where the first principle is, that all power emanates from the people, and is to be exercised for the common benefit of all, that there should any where exist a power of suspending laws, is preposterous. If there is any one power which, more than another, is necessary to constitute tyranny, it is that of suspending the operation of the laws. The suspension of laws, as to one individual, is an emanation from arbitrary power, in its most hateful character. It is no answer, to say, that in this case the act was for the benefit of the individual; for, if the legislature have power to suspend the laws for his benefit, they may place him beyond the pale of their protection, by denying him the right of the *habeas corpus*, or put a mark upon his forehead, as a proscribed felon.

The pretext usually urged for the passage of these laws is, that the petitioners were unfortunate; as if the power of the legislature depended upon the circumstances of individual petitioners. The policy of these acts, even with the advocates of them, arose from facts, of which the legislature were never proper judges, and in which they were constantly liable to be deceived. But the legislature has no moral power, except for the good of the whole; and it can never comport with publick justice, or be for the good of the whole, that a part should be exempted from the common burdens. If the legislature choose to

*Chittendon,*
December,
1825.

Ward
*vs.*
Barnard.

pass a bankrupt law, or to render the poor laws still more leni-ent, by saying that no man shall be imprisoned, let them do it. But let it be a general law, operating upon the whole commu-nity, of which every one may be entitled to the benefit, if his circumstances render it necessary. Let us no longer be insulted with the preposterous notion, that the legislature can legislate in particular cases. A bill, stating that no man should be im-prisoned, when in the opinion of any particular body of men, say the supreme court, it would not be beneficial to the publick or his creditors, would be absurd; and yet it is difficult to per-ceive how it is less so, for the legislature to exercise the same discretion. It is derogatory to the high character of the legisla-ture, for a moment to suppose, that they will degrade themselves by becoming mere arbitrators, to examine cases of particular hard-ship, and pervert their authority to legislate for particular cases.

There is now but little danger to be apprehended from any future attempt of the legislature, to exercise this pretended au-thority. The subject needs only to be examined, to satisfy every one, not only of its impropriety, but of its absurdity. But it is said, courts should beware how they attempt to set aside the do-ings of the supreme power of the state. This argument is en-titled to its proper weight; but we have a right to expect from the Court, an independent exercise of their peculiar powers, and from the high character of our judiciary, we know they will not be drawn from an honest exercise of their opinions, from any fear of coming in collision with the legislature. The hard-ships which may result to some individuals, if these acts were set aside, will have its weight with the Court, and will lead them to consider well of their judgment. But the peculiar hardships of individual cases has little to do with judicial determinations; and, as has been well said, they are the shipwreck of the law. The case of *Holden* vs. *James*, 11 *Mass.* 396, is a strong expres-sion of the Massachusetts bench, on this subject.

These acts destroy vested rights. That the creditor has a right to his money, due from the debtor, is too clear to be dis-puted. It is equally clear, that he has a right to all the means pointed out by law, to collect that money; and whenever the legislature attempts to interpose, and throw their broad mantle over the debtor, to screen him from the collection of an ac-knowledged debt, they do not injure the creditor only, but the publick, and destroy that confidence, of which they ought to be the depositories.

They are contrary to the 10th *section* of the *first article* of the constitution of the United States. The bond upon which the plaintiff declares, is executed conformably to law, with such conditions as the law has prescribed. By the voluntary consent of the debtor, this bond is to become forfeited, if the conditions are not kept; and yet the legislature say he shall be released from the performance of these conditions. A release of the conditions is a discharge of a bond. And in what other or differ-

ent light can this legislative release, from the performance of conditions, be considered ? It is immaterial what the conditions are, so long as they are legal; and a bond conditioned to deed a farm, may as well be the subject of legislative interference, as this. If the legislature can release any conditions, they can, by parity of reasoning, release all, and may, with equal propriety, deny the means of collecting a debt altogether.—*Struges* vs. *Crowninshield,* 4 *Wheaton's Rep.* 133. *Call* vs. *Hager,* 8 *Mass. R.* 423.

*Thompson, contra.* The only question involved in the case, is whether the act pleaded in bar, is such as "impairs the obliga-' tion of contracts," in violation of the constitution of the United States; *art.* 1, *sec.* 10.

While the power of the Court to adjudge any act of the legislature, repugnant to the constitution, and consequently *void,* is admitted, it is presumed that such power will be exercised with great caution, and that the act will be left to have its intended operation, until all doubts upon the subject are removed.—*Dartmouth College* vs. *Woodward,* 4 *Wheat. Rep.* 625.

The *obligation* of a contract must mean the *legal,* and not the *moral liabilities,* of the contracting parties, to perform it. The question then is, whether the act relied upon, has discharged, or attempted to discharge, any such *liability.*

The defendant contends, *first,* that the obvious sense of the words used in the constitution, "*no state shall make any law impairing the obligation of contracts,*" is, that no law shall be passed, which attempts to discharge a debtor from all *liability* upon his contract; at the same time leaving the states at liberty to modify and control the *remedies,* by which that *liability* may be enforced. And this position is supported by the numerous acts which have been passed, in many, or all of the states, and which have been sanctioned by numerous decisions.—*Sturges* vs. *Crowninshield,* 4 *Wheat. R. from* 200 *to* 207.—13 *Mass. Rep.* 17.—4 *Wheat.* 135. *Ibid. in notis,* 136, 7, 8.

*Secondly.* The defendant contends, that the act under consideration is the exercise of a controling or modifying power, which acts upon the *remedy,* merely releasing the *body* for a *season* only, leaving the *liability* of the debtor unaffected, and his property and his future acquisitions subject to attachments.—*Holmes* vs. *Lansing,* 3 *Johns. Cases,* 73.

1. Because the release and discharge of the *body* of the debtor from prison, is nothing more than taking from the creditor the power of punishment, used as a means or remedy to enforce the collection of the debt.—4 *Wheaton's R.* 203.

2. Because the right of action on the contract is only *suspended;* and at the expiration of five years, the body, as well as property, of the debtor, will be liable to arrest and attachment, in a suit upon the *bond itself,* so far as the principal is concerned; and no obligation of the *surety* is impaired, which existed previ-ious to the departure of the principal from the limits: and with-

*Chittenden,*
*December,*
1825.

*Ward*
*vs.*
*Barnard.*

out such act, it is not to be *presumed,* that the surety would have been made liable by a departure.    The object of the act was, to place the parties, at the expiration of the five years, in the same situation they were in previous to the passing of the act.

But if it be granted, that the remedy on the bond be destroyed altogether, the judgment or execution remains in force, and may be prosecuted at *any time.*    The bond is taken for the indemnity of the sheriff, and is not, as between the *debtor* and *creditor,* a new *security.*    The debtor being set at liberty, without the consent of the creditor, he has the same remedy upon the judgment, as he would have upon a new security, taken upon the discharge of the *debtor* by himself, or upon a judgment, upon which the debtor had been committed and discharged, upon taking the poor debtor's oath.

If a law which affects the creditor's remedy, and deprives him of some of the means by which he may hope to enforce the collection of his debt, or, at least, suspends the right to use such means, be within the constitutional prohibition, this state has surely transcended its constitutional powers in many other instances.

The laws relative to poor debtors; the law exempting certain property from the levy of execution; the law discharging property attached after a certain time; the law prohibiting the service of writs on the Sabbath day; the law prohibiting writs of error in certain cases; the statute of limitations; the law relative to the sale of real estate on execution; and numerous other statutes, are all laws of this description.

*Thirdly.*    Although an act may be unconstitutional, so far as it operates upon, and discharges the *contract;* yet the same act may be valid, so far as it releases the body of the debtor from *imprisonment,* and frees him from arrest.—18 *Johns. R.* 54, *Post* vs. *Riley.*

The case of *Sturges* vs. *Crowninshield* does not involve the present question, but it fully recognizes the principle contended for by the defendant.

The opinion of the Court was delivered by

SKINNER, Ch. J.    Although the legislature have passed repeated acts similar to that on which the defendant, in this case, relies, and their authority has been as repeatedly questioned, yet, for many years past, no case has occurred, which this Court has been called upon to decide.

The interest which seems to have been excited in the publick mind, the respect due to the opinion of many intelligent citizens, and the peculiar importance attached to every question, involving the constitutionality of an act of the legislature, are considerations which cannot but have influenced the Court to give to the subject the most careful and deliberate examination.

The peace and welfare of the state essentially depends upon the respect attached to the laws enacted by the legislature, and security to the rights and privileges of the citizens, upon the prompt and effective aid afforded in their administration.    Where

Chittenden,
December,
1825.

Ward
vs.
Barnard.

there has been the exercise of a power not delegated, or that is opposed to the constitution, *the supreme law*, the peace of the state, and security to the rights of the citizens, forbid that aid; and it cannot be given, without betraying the most sacred publick trust.

It is contended by the defendant, that the act in question is warranted by the constitution of the state, and is not opposed to that of the United States. The plaintiff insists, that it is void, as opposed to both. Our attention has been more particularly confined to an examination of the question arising under the former; and the opinion we have formed, is made in reference thereto.

That *absolute despotick power*, which it is said *must, in all governments, reside somewhere*, and which is exercised by the British parliament, was, by the people, in the formation of our government, carefully retained. And it is a fundamental principle, engrafted into the constitution, that *all power is originally inherent in the people;* and *that all officers of government, whether legislative or executive, are their trustees and servants*—therefore, such power, and such only, as is delegated to them, can they exercise.

The people, by their constitution, have established, as one of the organs of this government, a supreme legislative power, vested in a house of representatives of the freemen of the commonwealth, or state of Vermont. They have also, by the constitution, established an executive, and a judicial power. In this instrument, the powers conferred upon each department, are particularly restricted, pointed out, and defined; and are declared to be separate and distinct.

The house of representatives are, by the 9th section, styled the general assembly of the state of Vermont; and it is therein declared, "they shall have power to choose their speaker, secretary of state, their clerk, and other necessary officers of the house; sit on their own adjournments; prepare bills, and enact them into laws; judge of the elections and qualifications of their own members; they may expel members, but not for causes known to their constituents antecedent to their election; they may administer oaths and affirmations, in matters depending before them; redress grievances; impeach state criminals; grant charters of incorporation; constitute towns, boroughs, cities, and counties: they may annually, on their first session after their election, in conjunction with the council (or oftener, if need be,) elect judges of the supreme and several county, and probate courts, sheriffs, and justices of the peace; and, also, with the council, may elect major generals and brigadier generals, from time to time, as often as there shall be occasion; and they shall have all other powers necessary for the legislature of a free and sovereign state. But they shall have no power to add to, alter, abolish, or infringe any part of this constitution."

In no other part of the constitution, is there any express or implied power given to the general assembly, but what is strictly

*Chittenden,*
*December,*
*1825.*

Ward
*vs.*
Barnard.

legislative; it is, therefore, in this section we are to seek for au-
thority, to pass the act upon which the defence here rests.

The authority to "redress grievances," if not limited to proper
and appropriate acts of legislation, would be giving the general
assembly authority as boundless, as the complaints of the citi-
zens against each other, are countless.

By the section referred to, the general assembly have all
powers necessary for the legislature of a free and sovereign
state. As no legislature, as such, has any other than the power
of making laws; by this clause in the constitution, no other than
a law making power is conferred.

We are then to inquire, whether the act in question is a law.
*A prescribed rule of civil conduct,* is the correct, and universally
approved definition, of municipal law. So far as an act of the
legislature is retrospective, or *ex post facto,* it is not a prescribed
rule of conduct. An act conferring upon any one citizen, priv-
ileges to the prejudice of another, and which is not applicable to
others, in like circumstances, in the language of the learned
commentator upon the English law, *does not enter into the idea of*
*municipal law,* having *no relation to the community in general.*

Ward, the plaintiff in this case, having recovered a judgment,
and taken execution against Barnard the defendant, to obtain
satisfaction, elected his remedy, by taking the body of the
debtor; who was admitted to the liberties of the prison, on the
execution of the bond here in suit. By the standing law, the
departure from the liberties, without having paid the debt, or
being discharged by the creditor, or taking the oath prescribed
for poor debtors, constitutes a forfeiture of the bond. It was
the right of Ward, the creditor, in common with other citizens,
as a means of obtaining satisfaction, to hold the body of the
debtor in prison—the act, therefore, discharging the body, was
conferring upon this person a privilege, not extended to other
citizens in like circumstances; and taking from the creditor
rights, enjoyed by other citizens, in like circumstances. In
this view of the subject, this act cannot be distinguished, in
principle, from an act, in which the body of any other citi-
zen, not confined, shall be exempt from arrest; or an act, for-
bidding a particular citizen to use, for the obtaining satisfaction
of his debts, the ordinary process against the body. Though
it may not be feared, that injustice would follow the exercise
of such power, and although justice may, in particular cases,
have been promoted, sure it is, that those equal rights, so dear
and sacred in the estimation of a free and enlightened people, are
not secured by a constitution, yielding to the legislature the high
prerogative of imposing restraints, and conferring favours not
common to all.

The constitution declares, that *every citizen ought to find a cer-*
*tain remedy, by having recourse to the laws,* &c. and that *he ought to*
*obtain right and justice, conformably to the laws.* A certain reme-
dy is provided by law, which a creditor may pursue, as the

means of obtaining satisfaction of his debt; this remedy the *Chittenden,* December, 1825.
creditor has pursued in the case before us—and can it be said,
that he has obtained his right, conformably to the laws? or that
his remedy was certain, when that has since been taken from *Ward vs.*
him? The law had given to the creditor his election, to take ei- *Barnard.*
ther the property, or the body of his debtor; and whether there
was estate, by which the execution might then have been satis-
fied, and that has since been transferred, so that no effectual
remedy remains, does not appear—and if it did, it would only
present a case of manifest injustice, and would have no effect
upon the principle, upon which this case must be decided. A
right was, by the standing law of the state, vested in the credit-
or; and no special act of the legislature, can take it from him.

Judgment—that the plea in bar is insufficient.

*Charles Adams,* attorney for the plaintiff.

*John C. Thompson,* attorney for the defendant.

