*Orange,*
*February,*
*1827.*

THE TOWN OF BRADFORD and the TRUSTEES OF SCHOOLS therein, appellants, *vs.* GEORGE W. BROOKS *et. al.* appellees.

The Legislature have not power under the constitution of this state, to pass an act authorizing a probate court to renew a commission appointing commissioners of claims upon the estate of a deceased person, after such commission has been closed, and after the expiration of the time limited by the general law for such renewal. Such an act does not partake of the character of a law. It would be retrospective in its effect, taking away rights vested, and giving rights which had been extinguished by the general laws of the state.

THIS was an appeal from a decree of the probate court for the district of Bradford.

The record in this case showed, that administration on the estate of *William Trotter,* late of Bradford, deceased, was granted by the judge of probate, (the time when does not appear;) that the estate was represented insolvent, commissioners appointed to examine and allow the claims, return thereof made into the office of the court of probate, &c. &c. ; and that after the expiration of the time allowed by the statute for the renewal and extension of the commission, *George W. Brooks* and others applied to and obtained an act of the legislature, authorizing the judge of probate to renew the commission. This act was passed on the 18th November, 1824, and the judge is thereby authorized to renew the commission on the application of *Samuel Brooks, Jr. Mary M. Brooks, Lucinda Brooks,* and *John C. Brooks,* of *Stanstead,* in the Province of *Canada,* and *George W. Brooks* and *Edwin S. C. Brooks,* of *Worcester,* in the state of *Massachusetts,* or either of them ; the said *John C. Brooks* and *Edwin S. C. Brooks,* being minors, and out of the state of *Vermont,* during the time included and limited in the former commission, the said estate being more than sufficient to pay all the existing demands.——In conformity to this act of the legislature, application was made to the judge of probate to renew the commission, and on the last Tuesday of March, A. D. 1825, by a decree of the Judge, the commission was renewed for the term of three months, from which decree an appeal was taken to this Court, and the only question in the case was, *whether the legislature had power to pass the act authorizing this renewal of the commission.*

The case was argued at the last term, and by order of the court, was again argued the present term.

*Upham,* for the appellees. The only question is, is the law under which the court of probate acted, in making the decree appealed from, *unconstitutional ?* It is admitted, that the constitution of the United States is supreme, and imposes limits to the legislatures of the several states, which they have no right to pass. The first inquiry, therefore, is, did the legislature, in passing the act in question, transcend the limits prescribed to them by the *constitution of the United States ?* If they did not, we apprehend the law will be adjudged valid ; for it is in vain to look for any prohibition in the state constitution. *Chief*

*Justice Marshall,* in the case of *Fletcher* vs. *Peck,* 6 *Cranch,* 128, observed, "that the question whether a law be void for its repugnancy to the constitution, is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful case." "It is not," said he, "on slight implication and vague conjecture, that the legislature is to be pronounced to have transcended its powers, and its acts to be considered void. The opposition between the constitution and law should be such, that the judge feels a clear and strong conviction of their incompatibility with each other."

Orange, February, 1827.

Bradford et. al. vs. Brooks et. al.

The *constitution* of the United States, article 1, sec. 10, declares that "no state shall pass any bill of attainder, *ex post facto law,* or law impairing the obligations of contracts." This we apprehend is the only section of the constitution that the defendants will rely on in support of their argument.

If our opponents cannot satisfy the Court that this law is an *ex post facto law,* they must fail in their attempt to avoid it upon any constitutional prohibition. We maintain that the words *ex post facto,* when applied to a law, have a technical meaning, and in legal phraseology, refer to *crimes, pains* and *penalties.* This is evident, from the other parts of the sections: "No state shall pass any *bill of attainder, ex post facto law,* or law impairing the obligations of contracts." If an *ex post facto law* applied to contracts, and impaired their obligation, the latter prohibition would have been unnecessary and improper. Give the terms *"ex post facto"* the meaning we contend for, and the section contains no unnecessary prohibition. It will be found, on inspecting such of the state constitutions as take notice of laws made *ex post facto,* they have always been understood as referring only to *crimes, pains* and *penalties.*

*Constitution of North Carolina,* article 24, of the declaration of rights, declares, "that retrospective laws, punishing facts committed before the existence of such laws, and by them only declared criminal, are oppressive, unjust and incompatible with liberty; wherefore no *ex post facto law* ought to be made."

*Constitution of Massachusetts,* article 24, of the declaration of rights----"Laws made to punish for actions done before the existence of such laws, and which have not been declared crimes by preceding laws, are unjust, oppressive, and inconsistent with the fundamental principles of a free government."

*Constitution of Delaware,* article 11, of the declaration of rights----"That retrospective laws, punishing offences committed before the existence of such laws, are oppressive and unjust, and ought not to be made."

*Constitution of Maryland,* article 15, of the declaration of rights----"That retrospective laws, punishing facts committed before the existence of such laws, and by them only declared criminal, are oppressive, unjust, and incompatible with liberty; wherefore no *ex post facto law* ought to be passed."

Again, *Blackstone's* description of the terms is clear and unequivocal. "There is," says he, "a still more unreasonable

*Orange,*
*February,*
*1827.*

*Bradford*
*et. al.*
*vs.*
*Brooks*
*et. al.*

method than this, which is called making of laws *ex post facto,* when after an action, indifferent in itself, is committed, the legislature, then for the first time, declares it to have been a crime, and inflicts a punishment upon the person who has committed it. Here it is impossible that the party could foresee that an action, innocent when it was done, should be afterwards converted to guilt by a subsequent law; he had, therefore, no cause to abstain from it, and all punishment for not abstaining from it, must of consequence be cruel and unjust."—: 1 *B. Com.* 46.----6 *Cranch,* 138.----2 *Gall.* 138.

In *Colden & Wife* vs. *Bull & Wife,* 3 *Dallas' Reports,* page 386, the supreme court of the United States decided, that the prohibition not to pass any *ex post facto law,* was not inserted to secure the citizen in his private rights, of either *property* or *contract.* The prohibitions not to make any thing but gold and silver coin a tender in payment of *debts,* and not to pass any law impairing the obligation of contracts, were inserted to secure private rights; but the restriction not to pass any *expost facto law,* was to secure the *person* of the subject from *injury* or punishment in consequence of such law----*Sargeant on Constitutional Law,* 347.

*Chase,* J. in delivering his opinion in the case cited, observed, "that the prohibition against making *ex post facto laws,* was introduced for greater caution, and probably arose from the knowledge that the parliament of Great Britain claimed and exercised a power to pass such laws, under the denomination of bills of attainder, or bills of pains and penalties, the first inflicting *capital,* the other less punishment. To prevent such and similar acts of violence and injustice, (says the judge,) I believe the federal and state legislatures were prohibited from passing any bill of *attainder,* or any *ex post facto law.*"

The same judge says, that the plain and obvious meaning and intention of the prohibition is this: that the legislatures of the several states *shall not pass laws, after a fact done by a subject or citizen, which shall have relation to such facts, and shall punish him for having done it.* The courts in England have always considered penal statutes, that enacted crimes, or increased the punishment of them, as *ex post facto laws.* Statutes affecting contracts have never been so considered.----*Lock* vs. *Darwin, et. al.* 9 *Mass.* 360----8 *do.* 468, *Walton* vs. *Baker et. al.*

If we are correct in our definition of *ex post facto laws,* the act under consideration cannot be adjudged void on that ground.

The case of *Colden & Wife* vs. *Bull & Wife* was a much stronger case than the one on trial. The legislature of Connecticut, on the 2d Tuesday of May, 1795, passed a resolution, or law, which, for reasons assigned, set aside a *decree* of the court of probate for the district of Hartford, made on the 21st March, 1793, which *decree disapproved* of the *will* of *Norman Morrison,* (the grandson) made the 21st Aug. 1779, and refused to record said will;----and granted a new hearing by the said

court of probate, with liberty to appeal therefrom in 6 months. A new hearing was had, in virtue of this resolution, or law, before said court of probate, who, on the 27th of July, 1795, *approved* the said will, and ordered it to be recorded. In August, 1795, appeal was had to the superior court, at Hartford, who, at February term, 1796, *affirmed* the decree of the court of probate. Appeal was then had to the *supreme court of errors* of the state of *Connecticut*, who, in June, 1796, adjudged that *there were no errors*. More than 18 months elapsed from the decree of the court of probate, (on the 21st March, 1793,) and hereby *Bull & Wife* were barred of all right of appeal by statute of, Connecticut. *Colden & Wife* claimed the premises in question in right of his wife, heiress of N. Morrison ; *Bull & Wife* claimed under the will of Morrison. The cause was carried to the supreme court of the United States.——It was there contended for plaintiffs in error, that the law of the legislature of Connecticut, granting a new hearing in the case, was an *ex post facto law*, and prohibited by the constitution of the United States. The court overruled the objection, and supported the law of Connecticut.

Orange,
February,
1827.

Bradford
et. al.
vs.
Brooks
et. al.

2d. Have the legislature a right to pass a retrospective law in relation to civil cases? It is a general rule, applicable to all laws, that generally they are to be considered as prospective, and not to prejudice or affect the past transactions of the subject. *Nova constitutio futuris formam imponeri debet non practentis.*——2 *Inst.* 292.

It is not intended by this rule, says *Jackson*, J. in *Whitman* vs. *Hapgood et. al.* 10 *Mass.* 439, that the legislature cannot in some cases make laws with a retrospective operation; but this effect is not to be given to a statute, unless such intention is clearly expressed.

In construing statutes, the intention of the makers is to be pursued.——1 *Swift Dig.* 11. The cause of *Couch, qui tam*, vs. *Jeffries*, 4 *Burrows' Rep.* 2460, was decided on this principle : it was an action for the penalty for not paying the stamp duty upon an indenture. On the trial, the plaintiff had a verdict, and it was moved to stay entering the judgment, the defendant having, after verdict, paid the duty, pursuant to an act which discharged persons who had incurred penalties, upon paying the duty by a certain day, and before which it had been paid ; and the question was, whether the act related to actions commenced before its passing. *Lord Mansfield* placed his opinion on the intention of the legislature, which, he supposed, could not have been to take away from the person who had incurred a great deal of cost in prosecuting it, a vested right. The case of *Hellmon* vs. *Shutes*, 2 *Show.* 17, was decided upon the same principle. So, also, was the case of *Dash* vs. *Van Kleeck*, 7 *John. R.* 477. Courts always keep in view the intention of the legislature, in construing statutes : and it is a rule that they shall be construed to operate prospectively, unless the

Orange,
February,
1827.

Bradford
et. al.
vs.
Brooks
et. al.

contrary is made manifest by the express words of the act.----
7 *John*. 500.

We can have no difficulty in construing the statute under
consideration.   The intention of the legislature is made mani-
fest by express words ; and we apprehend the Court are not at
liberty to treat it as a nullity, unless the legislature have passed
their constitutional limits in enacting it.   The question is not
as to the construction of the act, but as to its validity.   We be-
lieve that no adjudged case can be found, where a statute has
been declared invalid, merely on the ground that it operated
retrospectively.   Cases may be found where courts have refus-
ed, in construing statutes, to give them a retrospective op-
eration, when they would admit of a different construction.
Laws having a retrospective effect in civil cases, have nev-
er been, on that ground alone, deemed invalid.   A member
of the convention who framed the constitution of the U. S.
"had an ardent desire to have extended the provision respect-
ing *ex post facto laws* to retrospective laws in general ;" but hav-
ing failed in accomplishing his object, when he became one of
the judges of the supreme court of the United States, he con-
curred in the judgment that Congress possessed the power *to*
pass retrospective laws in relation to civil cases.----3 *Dall. R.*
397.----9 *Cranch*, 374,

Mr. *Sergeant*, in his treatise upon constitutional law, *p.* 348,
says, that an act of the legislature, contrary to the great first
principles of the social compact, is not rightful, as, for instance,
to make a man a judge in his own cause ; or seizing the prop-
erty of a citizen, honestly acquired, without compensation, or
retrospective laws in general ; yet, it seems, the law cannot be
declared void, by a court of justice merely because *it violates*
these general principles, if not prohibited by the constitution
of the state in which it is passed, or of the United States.----2
*Dall.* 304.----1 *Gall.* 105.

*Iredell*, J. in the case *Colden & Wife* vs. *Bull & Wife*, in de-
livering his opinion, observed, that "if a government, composed
of legislative, executive and judicial departments, were estab-
lished by a constitution which imposed no limits on the legisla-
tive power, the consequence would inevitably be, that whatev-
er the legislative power chose to enact, would be lawfully en-
acted, and the judicial power could never interfere to pro-
nounce it void."   "It is true," says he, "that some speculative
jurists have held, that a legislative act against natural justice,
must, in itself, be void ; but I cannot think that, under such a
government, any court of justice would possess a power to de-
clare it so."

*Blackstone* says, 1 *vol.* 91, if we could conceive it possible for
the parliament to enact, that a man should try his own cause,
"there is no court that has power to defeat the intent of the leg-
islature, when couched in such evident and express words as
leave no doubt whether it was the intention of the legislature
or no."   By our constitution, sec. 2, of the frame of govern-

*Orange,*
*February,*
*1827.*
Bradford
et. al.
*vs.*
Brooks
et. al.

ment, "The supreme legislative power shall be vested in a House of Representatives of the freemen of the commonwealth or state of Vermont." Sec. 3. "The supreme executive power shall be vested in a Governour, and in his absence a Lieutenant Governour, and Council." Sec. 4 declares that "courts of justice shall be maintained in every county in the state," &c.

Sec. 6. "The legislative, executive and judiciary departments shall be separate and distinct, so that neither exercise the powers properly belonging to the other." We therefore have a government composed of legislative, executive and judicial departments; and the only limit imposed upon the legislative department is, that it shall not exercise powers properly belonging to either of the other two branches. The inquiry, then, is, did the legislature, in passing this act, exercise a power properly belonging to either of the other branches of the government? If not, we maintain that this court are not authorized to declare it void.

The power of interpreting and applying laws belongs to the courts of justice; but to declare what the law shall be, belongs to the legislature.---6 *Bac.* 378.---2 *Cranch,* 276. The legislature, in passing this law, did not exercise a power properly belonging to a court of justice, nor a power ever exercised by that tribunal. It was purely legislative, not judicial.----It was not in the power of a court of justice to afford us any relief. Our case required *legislative,* and not judicial aid. We did not ask the legislature to set aside a judgment and grant a new trial, or to do any other act that is usually done by a court of justice. The act, therefore, cannot be adjudged void, on the ground that the legislature exercised a judicial power, in enacting it. Further, we insist, in the language of Judge *Spencer,* in the case of *Dash* vs. *Van Kleeck,* "that our state legislature, in acting within the pale of the constitution of the U. S. and of this state, has the same omnipotence which Judge *Blackstone* ascribes to the British Parliament. 'It has sovereign and uncontrollable authority, in the making, confirming, restricting, abrogating, repealing, reviving and expounding of laws, concerning all matters, of all possible denominations.' "---1 *Bl. Com.* 160.

3d. Is the act invalid, on the ground that it divests the town of Bradford of a vested rights? The town of Bradford, in behalf of the trustees of schools, complain of this act, and contend that their rights have been disturbed by it. The question naturally arises, what are the rights of the town of Bradford, said to have been disturbed? They say that Capt. Trotter died intestate, leaving no heirs by law capable of inheriting his estate, and that by a law of escheat, they have a claim to it for the benefit of schools. Admit this to be true, no right has vested in the town; no decree has passed declaring the escheat, and until that is done, no right can be acquired to the property. It is the decree itself that gives the right, and vests the property in the town. Before any decree of escheat can pass, all the *just debts* and *charges* must be deducted. The town can

37

*Orange,*
*February,*
*1827.*

Bradford
et. al.
*vs.*
Brooks
et. al.

have no colour of claim to any part of the property necessary for the payment of the just debts. If they have any claim, it is to what may be left, after all the just debts and charges are deducted. We claim, that a certain sum ought to be deducted from this estate, to pay a just debt, before the escheat shall be declared. The town of Bradford, in behalf of the trustees of schools, object to this deduction, on the ground that the claim is barred by the statute of limitations. Suppose this to be true, the statute of limitations does not extinguish the debt; it only bars the remedy. The debt is as much a just debt after the statute has run, as it was before.---*Ballantine on Limitations,* 188. If the town object to the justice of our claim, they can oppose it before the proper tribunal, to wit, the commissioners. That question cannot be determined at this time. The case of *Colden & Wife* vs. *Bull & Wife,* before cited, fully establishes the principles for which we contend. *Chase,* J. in delivering his opinion in the case, used the following language, viz : "When I say that a right is vested in a citizen, I mean, that he has the power to do *certain actions,* or to possess *certain things,* according to the law of the land. If any one has a right to property," says he, "such right is a *perfect* and *exclusive* right ; but no one can have *such* right before he has acquired a *better* right to the property than any other person in the world ; a right, therefore, only to recover property, cannot be called a *perfect* and *exclusive* right. I cannot argue, that a *right* to *property,* vested in *Colden's* wife, in consequence of the decree of the 21st of March, 1793, disapproving of the will of *Morrison.*" If this reasoning be correct, (and it was agreed to by the whole court) the objection to this act, on the ground that it destroys a vested right, is fully answered.

4th. Can the act be avoided on the ground that it is not a *law,* but a mere sentence, or a decree, relating to a private controversy between individuals?

The act merely authorized the judge of probate for the district of Bradford to sustain the petition of Samuel Brooks et. al. for a renewal of the commission formerly issued on the estate of *William Trotter,* late of Bradford, deceased ; in the same manner as though the petition had been filed within six months next after the close of said commission, and to renew the same if he should think proper. How this act can be called a sentence, or decree, I am unable to decide. It more properly prescribes a rule of conduct for the court of probate, and all others who have claims against Trotter's estate,---which is the very definition of a *law.*----1 Bl. Com. 44.

A *sentence,* or *decree,* is defined to be a judgment pronounced by a court, or opinion of a judicial tribunal.-----*Jac. L. Dic.* 2 *vol.* 213. Now, whenever the legislature shall do an act proper to be done by a court of justice, and usually performed by that tribunal, *that act* may with some propriety be called a *sentence,* or *decree.* But if the act performed by the legislature could not have been done by a court of justice, then it cannot

be called a *sentence*, or *decree*; for the very terms imply a judicial determination. Again, the case of *Colden & Wife* vs. *Bull & Wife* settles this question. The act of Connecticut, which gave rise to that case, set aside a decree of the judge of probate for the district of Hartford, and granted a new hearing in the case. Every objection that can be urged to the act under consideration, was urged in that case; yet the supreme court of the U. S. supported the law.

*Orange,*
*February,*
*1827.*

Bradford
et. al.
vs.
Brooks
et. al.

The case of *Holden* vs. *James, Adm.* 11 *Mass.* 396, is relied on by the defendants, as a strong case against the validity of this act. On a critical examination of that act, it will be found to differ materially from ours. The resolve of the legislature of Massachusetts authorized *Holden*, and no other person, to sue; the several statutes of limitations were suspended as to his claim only. The object of the action was to recover a large sum from an *administrator*, after he had settled his administration account, and pursuant to a decree of the court of probate, paid over the whole balance in his hands to the guardian of the only child of the said intestate, who was her next of kin. If, therefore, the money had been recovered in the action, the defendant would have been compelled to have paid it out of his own funds. "There is no doubt," says Judge *Jackson*, in delivering the opinion of the court in that case, "but that the legislature may suspend the execution or operation of a law whenever they shall think it expedient." Much reliance was placed by the court on the fact, that the resolve suspended the operation of *the* several statutes of limitation, as to *Holden* only, and left them in full force as to all other creditors.----The Court do not meet with this difficulty in our case; our act is not limited to any particular creditor or creditors: all are placed upon equal grounds. The commission, when renewed, will be open for all creditors. Again, we do not attempt to recover of an administrator after he has accounted for all the funds in his hands, and settled his administration account. We do not ask the Court to make a decision prejudicial to the administrator, or to any of the creditors of the estate. The administrator has not settled his account; the whole property is now under his control, and he has no objection to the allowance of our claim, if the Court so direct.

5th. Is the act analogous to an act passed October, 1823, entitled "An act granting *Alexander Campbell*, of *Putney*, the right to enter an appeal from the report of the commissioners on the estate of *John Campbell*, deceased"?

This act, it is said, has been adjudged unconstitutional; and that decision must govern our case. In the first place, I have not much confidence in cases reported by counsel in the argument of a cause; we never have a full view of the case in such reports. In the second place, I can see no analogy between the two cases, admitting the report of the gentleman to be correct. It appears, from the preamble of the act granting Campbell the right to enter his appeal from the report of the com-

*Orange,*
February,
1827.

Bradford
et: al.
*vs.*
Brooks
et. al.

missioners, that his claim had been investigated by them, that they had reported a balance of $192,33 against him, in favour of the estate, which report had been returned to the court of probate, and accepted;----and that he neglected to enter his appeal within the time prescribed by law. It seems, from the facts set forth in the preamble of the act, that Campbell's claim had been fairly *adjudicated.*---The commissioners had reported a balance against him, which report had all the effect of a judgment.----*Executors of Doolittle* vs. *Hunsden, Bray. R.* 41.

The rights of the parties had become fixed by a judicial determination. The commissioners, in adjusting Campbell's claim, acted judicially; and the balance reported against him, was in the nature of a judgment, and conclusive upon both parties.----*Vide case above cited.*---*D. Chip. Rep.* 381.

We present a different case to the Court. Our claim has never been investigated by any tribunal. The rights of the parties had not been settled by a judicial determination, at the time our act was passed. No judgment had been pronounced against the validity of our claim; consequently, none could have been vacated by the act. The court, probably, in deciding Campbell's case, considered the act of the legislature rather a judicial, than a legislative act,----and prohibited by the constitution of this state.

*Smith,* contra. In this case the appellants contend, that what the legislature could not do directly, they cannot do indirectly. They could not directly, by their act, renew the commission; therefore they cannot do it indirectly, by authorizing the judge of probate to do it. It is admitted by the aforesaid special act, that the proceedings were had on the estate of Mr. *Trotter,* deceased, in pursuance of the 98th section of the probate law of 1821, and that the commission was closed, and the probate court had no jurisdiction or power to renew it; and that the petitioners had never presented their claims against the estate. If these be facts, then the petitioners, by the 91st section of the probate law of 1821, were forever barred of their claim. This section prescribes a *general rule,* which is applicable to all cases of the settlement of estates that are represented insolvent; and it was not in the power of the legislature to suspend the operation of this general rule in this particular case, without disturbing vested rights. It must be admitted, that after deducting enough to pay the debts which had been proved against the estate before the commissioners, and the charges for administering, the remainder of the estate, however much or little, was vested in those who were legally entitled to it. If the petitioners had a subsisting demand against the estate of Capt. Trotter, at the time they petitioned the legislature for a special act, they did not need the act; but if they had no demand that could be sustained at law, or in equity, against the estate at that time, because it was. *forever. barred* by the 91st section of the probate law, it was not in the power of the legislature to

remove that bar, and make that which was no demand against the estate, a legal subsisting demand. The legislature might as well pass an act to take the farm of A and give it to B, as by a special act to suspend the operation of the statute of limitations in the 91st section, in this particular case.

There is nothing in this special act which differs it from other special acts, which this Court has adjudged to be unconstitutional and void.----See *Ward* vs. *Barnard*, 1 *Aik. Rep.* 121.---- *Bates* vs. *Kimball*, 2 *D. Chip. Rep.* 77.----*Holden* vs. *James*, 11 *Mass.* 396.

No act is to operate retrospectively, so as to take away a vested right.----See 3 *Cranch* 159.----7 *Johns. Rep.* 477.----2 *Mod.* 310.--4 *Burr.* 2460.---2 *Gallison*, 133.---10 *Mass.* 439.---12 *Mass.* 253.---1 *Bay*, 98, 252.---2 *Cranch*, 272.---*Brayt. Rep.* 219.

SKINNER, Ch. J. after stating the foregoing facts in the case, delivered the following opinion of the court.

The only question submitted is, had the legislature authority to pass the act authorizing the judge of probate to extend the time beyond the time limited by the standing law for the exhibition and allowance of claims against the estate. Without going at length into the principles by which courts ought to be governed, in deciding upon the validity of an act of the legislature, the delicacy and importance of which has ever been felt, and frequently expressed by the court; it will be necessary only, in deciding the case, to compare the principles by which it must be governed, with those which have already been established by the courts.

In the case of *Ward* vs. *Barnard*, 1 *Aikens's Rep.* 121, which was an action brought upon a jail-bond, and the defendant relied upon a special act of the legislature. discharging his body from imprisonment, The court did not, as suggested by the plaintiff's counsel, rest the decision at all upon the ground that the act was opposed to the constitution of the United States.

The condition of the bond is, that it shall be void on the prisoner's being discharged by due course of law. If, therefore, the act would have been valid but for the constitution of the United States prohibiting the passing of acts impairing the obligation of contracts, it was at least questionable in the view of the court, whether the act of the legislature might not be considered as a discharge according to, or by due course of law. If the legislature, by the constitution of this state, have the power to discharge a debtor from the liberties of the prison, the bond conditioned to be void on the debtor's being legally discharged, it may be urged, is a contract, the obligation of which cannot be impaired by the exercise of this authority. If the constitution of this state had given to the general assembly the exclusive power of discharging poor debtors on oath, it may well be contended that the contract of the parties, viz. the bond for the liberties having reference to such discharge, would be subject to, and the obligation thereof of course not impaired

Orange,
February,
1827.

Bradford
et. al.
vs.
Brooks
et. al.

by the exercise of this authority. The principles upon which that case was decided, were, that the act was retrospective in its operation---That it tended to take away rights vested and secured under the existing laws---That it was partial in its operation, taking from, or denying to one citizen, rights and privileges claimed and exercised by all others in like circumstances, and conferring upon another citizen rights and privileges denied to all others in like circumstances.

In the case of *Bates* vs. *Kimball*, administrator of *Barber*, which was an action of debt, brought to recover the amount allowed by commissioners of the estate of Barber, deceased. The defendant relied, in his defence, upon a special act of the legislature, authorizing an appeal to the supreme court, after the regular time for appealing had elapsed. In that case the act was decided to be void, upon the principle that it was the exercise of judicial power, and also that it was retrospective in its operation, and went to deprive the party of a vested right.

A case very similar to this was decided by this court, in Chittenden county, on the last circuit, of *Staniford* vs. *Barry*, administrator of *Barry*, in which the same doctrine was held by the court. Although it is not necessary to notice the decisions of courts in other states, the case of *Holden* vs. *Janes*, 11 *Mass.* 396, is so directly in point, that it may with propriety be referred to. The court in that case say, the legislature have no authority to enact a different rule from that of the standing laws, for the government of one particular case, or to repeal a law, or suspend its operation as to certain individuals, or any particular suits, while it remains in force, as to all others. It is difficult to distinguish this case in principle from those that have been decided.

It appears to be sure, that the persons at whose instance the act was passed, were out of the state, and that two of them were minors. The general law on the subject makes no distinction amongst creditors, whether at home or abroad, whether minors or adults; and if for this cause the legislature have the power to pass a special act suspending the operations of the general law in this particular case, they must have the same power in any case where the cause assigned in their opinion shall make it just. Others having claims against the estates of deceased persons in like circumstances, are precluded by the general law.

If the legislature can in this way enable the creditors (whose demands are barred) to obtain satisfaction from the estate of the deceased indirectly, they can authorize suits to be brought, and satisfaction to be obtained directly from the estate in the hands of any one to whom it may have passed in a course of distribution or otherwise, and this at any future period. If they can remove the limitation in this case, which is by the general law two years, they may do the same as to any other limitation.

This act is not general in its operation, extending alike to all

in like circumstances. It is retrospective in its effect, and goes to take away rights vested by the general law, and to give rights extinguished by the same general law, and we believe it an act which courts cannot enforce.

Orangs,<br>February,<br>1827.<br><br>Bradford<br>et: al.<br>vs.<br>Brooks<br>et. al.

The decree of the court of probate 'must therefore be set aside.

*J. Merrill, N. Baylies,* and *Wm. Upham,* for the appellants.

*D. Smith,* for the appellees.

