ANDREW C. DAVISON *vs.* ANDREW JOHONNOT & another.

The legislature has power to authorize the guardian of a person *non compos mentis* to sell a part of his ward's real estate, and apply the proceeds to discharge incumbrances on other parts thereof. And notice need not be given to the ward before granting such authority to his guardian.

Where a party, who has due notice of an application to the probate court to place him under guardianship as a person *non compos mentis*, attends the court and resists the application, and the court, after the hearing, adjourns the case from time to time, it is not necessary to the validity of a decree adjudging him to be *non compos mentis*, and appointing a guardian over him, that notice should be again given to him before passing such decree.

WRIT OF ENTRY to recover lands in Boston.

At the trial, the demandant produced a deed from Amos Sumner, dated June 7th 1823, duly executed and recorded, by virtue of which, it was admitted by the tenants, he became seized and possessed of the demanded premises, and continued so seized and possessed until the 10th of May 1836.

The tenants, to maintain their title to the demanded premises, showed that they were heirs of Nancy Edwards, and produced the deed of William T. Spear, dated May 10th 1836, executed in due form and recorded, wherein said Spear conveyed said premises to said Nancy, reciting therein that he conveyed the same as probate guardian of Davison, the demandant, by virtue of a resolve of the legislature of this Commonwealth, passed on the 16th of April 1836. A copy of the resolve was annexed to said deed, and was as follows: "*Resolved*, that William T. Spear, guardian of the person and estate of Andrew C. Davison, an insane person, is hereby authorized to sell the real estate of said Davison, situate in Pleasant Street, in the city of Boston, and appropriate the proceeds to the payment of incumbrances upon another estate of said Davison, situate in Washington Street in said Boston: Provided, however, that said Spear shall, before said sale, file in the probate office of the county of Suffolk a bond, with sureties to the satisfaction of the judge of said court, that the proceeds of said sale shall be first applied to the discharge of all incumbrances on said estate in Washington Street, and then to the benefit of said ward, and be accounted for according to law."

The tenants also showed that said Spear filed a bond, which was approved, as required by the resolve. And to show that he was duly appointed guardian of said Davison, the tenants produced the records of tne proceedings of the court of probate for said county, and the proceedings of the mayor and aldermen of the city of Boston ; viz. the representation of Nathaniel Dearborn, made to said court October 28th 1833, that said Davison was "a person *non compos mentis*, and incapable to take care of himself," and a request that inquisition thereof should be made and a guardian appointed ; a decree of said court on the same

33 *

day, that inquisition thereof be made by the mayor and aldermen of the city of Boston, and that a warrant be issued to them accordingly; a warrant directing inquisition thereof by said mayor and aldermen; an order of said mayor and aldermen, of the same date, that notice be given to said Davison to appear before them on the 4th of November 1833, to show cause, &c., a copy of their record, stating that notice had been served on him and that he did not appear; a return of said warrant to the mayor and aldermen, dated November 11th 1833, in which they "adjudge that the said Davison is *non compos mentis,* and incapable of taking care of himself;" an order, issued by said court on the 18th of November 1833, reciting the result of said inquisition, and directing that an attested copy of said order should be served on said Davison, fourteen days at least before the 9th of December 1833, that he might be present on said day and show cause, if any he had, "why he should not be considered and adjudged to be a person *non compos mentis,* and liable to be put under guardianship, as such;" the return of an officer on said order, that he had given an attested copy thereof to said Davison, in hand, on the 22d of November 1833; also a decree of said court, passed on the 16th of June 1834, adjudging said Davison to be a person *non compos mentis,* &c., and appointing said Spear to be his guardian, and a letter of guardianship, of the same date, issued by said court to said Spear.

In the decree appointing said Spear to be guardian, the previous proceedings were recited, and that said Davison appeared, on the 9th of December 1833, and objected to the appointment of a guardian over him; "whereupon, after hearing the evidence adduced by the respective parties, and fully understanding the same, the same was, from the 9th day of December, continued from time to time to this day;" [June 16th 1834;] "and now it is considered and adjudged by the court here, that the said Andrew C. Davison is a person *non compos mentis,* and liable to be put under guardianship as such."

It was proved or admitted, that said Spear received of said Nancy Edwards the price for which he conveyed the demanded

premises to her, and that he discharged the incumbrances upon the demandant's estate in Washington Street, as required by said resolve ; that he rendered his account to the judge of probate, showing how he had applied the money received for the demanded premises ; that the said Nancy went into possession, upon receiving her deed, and continued in possession till her death in February 1842 ; that the said Spear was discharged from his guardianship of the demandant, by a decree of the court of probate, on the 19th of June 1837 ; and that his probate bond as guardian was put in suit by the demandant, and judgment recovered thereon for a balance of account, amounting to $574·94, and interest and costs, which judgment is still unsatisfied.

Upon the foregoing facts appearing, the demandant insisted that it was not shown that he had been duly adjudged to be *non compos mentis*, nor that said Spear had been duly appointed his guardian. He also insisted that said resolve had no validity, because the legislature had no authority to pass such resolve, and because no previous notice thereof was given to him.

The case was taken from the jury, by consent of the parties, and submitted to the court, upon the facts and documents shown in evidence at the trial.

At the argument, the demandant's counsel cited the authorities that are commented upon by the judge who gave the opinion of the court, and 13 Amer. Jurist, 79. 14 ib. 83 *& seq.* 1 Kent Com. (3d ed.) 455 *& seq. Bank of the State v. Cooper,* 2 Yerg. 599. *Tate v. Bell,* 4 Yerg. 202. Also *Jones v. Perry,* 10 Yerg. 59, where it was decided that an act of the legislature of Tennessee was unconstitutional, which authorized the guardian of minor heirs to sell their land and apply the proceeds to the payment of their ancestor's debts.

The tenants' counsel relied on *Rice v. Parkman,* 16 Mass. 326. He also cited other cases referred to in the opinion of the court, and *Kibby v. Chitwood,* 4 Monr. 91. *Shehan v Barnett,* 6 Monr. 594. *Coleman v. Carr,* Walker, 258.

*H. H. Fuller,* for the demandant.

*D. A. Simmons,* for the tenants

DEWEY, J. It will at once be perceived, that the present is a very grave question, in which we are called upon to review the proceedings of a coördinate branch of the government, and to decide whether the legislature, in passing the resolve authorizing the sale of the estate of Andrew C. Davison by his guardian, transcended the limits of its constitutional powers. Every presumption is to be made in favor of its validity ; and if our examination of the question shall result in only raising doubts in our minds whether it be constitutional, it will be our duty to permit the resolve to have its full force, leaving the responsibility with the legislature. On the other hand, if it be a plain and manifest departure from the provisions of the constitution ; if in passing this resolve the legislature has obviously transcended the powers conferred on the legislative departments; it is the high and solemn duty of this court, charged with expounding the laws, to give full force and effect to the constitution as the paramount law to which all legislative enactments must be subservient.

The demandant insists that this resolve is invalid : 1. Because it dispenses with a standing law in favor of an individual. 2. It is legislating for a particular case. 3. It is an act judicial in its nature and character. Then it is contended that these objections, if sustained, show a case where the legislature has acted in violation of those limitations and restrictions contained in the constitution of Massachusetts, and particularly the following provisions of the bill of rights : Art. 10. " Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws : " Art. 11. " Every subject of the Commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property or character : " Art. 12. " No subject shall be deprived of his life, liberty or estate, but by the judgment of his peers, or the law of the land :" Art. 30. " The legislative department shall never exercise the executive and judicial powers, or either of them."

The counsel for the demandant has, with great diligence and ability, called to his aid, in the enforcement of the principles for which he contends, the numerous decisions which have been

made in the courts of our sister States upon a course of legislation which had been somewhat freely indulged in, here and elsewhere, under the vague notion of an almost unlimited power to legislate for the public welfare. Thus we find acts of legislative bodies, granting new trials in cases pending before judicial tribunals; acts suspending the operation of statutes of limitations, barring actions at law; acts opening anew commissions of insolvency which had been closed by the general laws; and acts releasing a debtor imprisoned on execution, and discharging his body from arrest for a limited time. All these enactments, in some of which our own legislature has concurred, have resulted from a want of proper regard for those wise and salutary restrictions which the framers of the constitution had imposed upon the powers of the legislative department. These cases have passed in review before the judicial tribunals, and have been declared to be inconsistent with the principles of the constitutions of the various States in which these questions have been raised; and this course of legislation, it is understood, has been abandoned. *Ward* v. *Barnard*, and *Staniford* v. *Barry*, 1 Aik. 121, 314. *Town of Bradford* v. *Brooks*, 2 Aik. 284. *Kendall* v. *Dodge*, and *Hill* v. *Town of Sunderland*, 3 Verm. 360, 507. *Starr* v. *Robinson*, 1 Chip. 257. *Holden* v. *James*, 11 Mass. 396. *·Picquet's case*, 5 Pick. 65. *Merrill* v. *Sherburne*, 1 N. Hamp. 199. *Lewis* v. *Webb*, 3 Greenl. 326. *Durham* v. *Lewiston*, 4 Greenl. 140. *Bates* v. *Kimball*, 2 Chip. 77. *Keith* v. *Ware*, and *Lyman* v. *Mower*, 2 Verm. 174, 517.

The counsel for the demandant urges upon us, that the precedents, or judicial decisions, do not stop here, but will be found to go so far as to embrace the case now before the court. An opinion is cited of the justices of the superior court of New Hampshire, published in 4 N. Hamp. 572 – 574, given in answer to certain questions propounded to them by the legislature of that State, embracing, among others, the following: " Can the legislature authorize a guardian of minors, by a special act or resolve, to make a valid conveyance of the real estate of his ward ? " To this question, thus submitted, they reply, that the legislature ,as not constitutional power to pass such special art or resolve

This opinion, from so highly respectable a judicial tribunal, is certainly entitled to much consideration. But it is to be borne in mind, that it is an opinion given upon an abstract question, an *ex parte* opinion, without hearing arguments, without the aid of the learning and talent of the bar, which so materially contribute to the thorough sifting of a case, and preparing the way for a sound legal opinion. And we must take it in connexion with the opinions and adjudications of other judicial tribunals; the law of Massachusetts, as long expounded and practised upon; and the result to which our own deliberately formed opinions upon the question shall lead us.

The case of *Wally's heirs* v. *Kennedy,* 2 Yerg. 554, cited by the demandant's counsel, does not seem to apply to the general question here raised, but rather to an enactment restraining and regulating private rights in cases of judicial proceedings.

To some extent, certainly, a different view from that taken of this matter by the court in New Hampshire has prevailed. Thus in the constitution of the State of New York, art. 7, § 1, is contained the following provision : " No member of this State shall be deprived of any of the rights and privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers." In the case of *Clarke* v. *Van Sur lay,* 15 Wend. 436, where the rents and profits of real estate were given to a father during life, and the remainder in fee to his children, a private act of the legislature, authorizing a sale of this estate for the purpose of furnishing support for the tenant for life and his children, and educating the children, was held valid. The question was fully considered and ably discussed by Mr. Justice Bronson, in giving the opinion of the supreme court. This case afterwards came before the court for the correction of errors, and the decision of the supreme court was affirmed ; Chancellor Walworth and Senator Verplanck concurring in the affirmance. 20 Wend. 365.

In the case of *Estep* v. *Hutchman,* 14 S. & R. 435, effect was given to a private statute authorizing a sale of lands by guardians. See also *Bambaugh* v. *Bambaugh,* 11 S. & R. 191. In *Wilkinson* v. *Leland,* 2 Pet. 627, a special statute of the State of

Rhode Island, ratifying and confirming the sale and conveyance of land, which had been made by an executor without legal authority, was held to be valid. The statutes in these cases, it will be perceived, were obnoxious to the same objection now urged against the resolve before us. They were legislating for a particular case, dispensing with the general standing law, n favor of an individual, and changing the legal title to real estate, taking it from one man and vesting it in another, without judicial sentence or judgment by his peers.

But a case more in point, as an authoritative decision, is that of *Rice* v. *Parkman,* 16 Mass. 326, where this court held that the legislature have authority to pass an act licensing the sale of real estate of a minor, and this notwithstanding they have, by a general act, delegated the same power to the judicial courts. The opinion of the court in that case, as given by the late Chief Justice Parker, is full to the point in controversy. It holds that the power thus exercised is not judicial, "for it was not a case of controversy between party and party, nor is there any decree or judgment affecting the title to property. The only object of the authority granted by the legislature was, to transmute real into personal estate, for purposes beneficial to all who were interested therein." It is "the use of a parental or tutorial power. It is, in fact, protecting him in his property." Again; it was there said by the court, that it was no objection, that the legislature had before made a general provision for licensing the sale of minors' estates; nor that notice was not given to the minor before passing the resolve.

Then we have an uninterrupted course of legislation of a similar character, for the period of sixty four years that have elapsed since the adoption of the constitution which is supposed by the demandant to contain provisions controlling and restraining such exercise of legislative power. It has been again and again said by this court, and by various judges, that the construction of the constitution, given by the legislature by a long continued course of legislative acts, ought to have great weight in the consideration of a question like the present; and is not to be overruled unless manifestly erroneous. The vast amount

of property, now held under titles derived from similar legisla
tive acts, should lead us to proceed most cautiously in the
investigation of this subject, and to deal with it in a liberal spirit,
when called upon judicially to declare that this course of legis-
lation conflicts with the constitution, and that all the special
acts of this character are of no validity.

After much reflection upon the subject, we are not satisfied
that the legislature, in passing this resolve, transcended its con-
stitutional powers.   The act was not a judicial one.   The pro-
ceeding does not deprive the party of his property.   The only
effect was to change his estate from real to personal assets ; the
legal interest in the property, or the avails thereof, being wholly
secured for his benefit.   It was an act passed by the legislature
upon the application of Davison's guardian, the person whom
the law had placed as the legal representative to watch over and
protect the interest of the ward, and must be assumed to have
been done not adversely to his interest, but for his benefit.   We
think the same principles which were applied in *Rice* v. *Park-
man* must be adopted here, and will govern the present case.

The effect which has been judicially given to other legislative
acts, equally or more obnoxious to the objection of being in
violation of the same provisions of the constitution, is also a fit
subject for our consideration, in deciding the present case.
Thus it has been held, that the legislature may constitutionally
enact laws to render valid and legal the doings of public offi-
cers ;   to confirm the acts of towns and other corporations,
invalid for some informality ;   although by such enactments
individuals may be deprived of rights previously vested.   *Walter*
v. *Bacon*, 8 Mass. 468.    *Patterson* v. *Philbrook*, and *Locke* v.
*Dane*, 9 Mass. 151, 360.   The decisions as to the act of 1785,
c. 62, § 4, prescribing a new rule of law as to estates in joint
tenancy, were, that although extending to past grants and
devises, yet it was constitutional.   It was said by Parsons, C. J.,
in *Holbrook* v. *Finney*, 4 Mass. 568, " there seems to be no
constitutional objection to the power of the legislature to alter
a tenure, by substituting another more beneficial."   See also
*Annable* v. *Patch*, 3 Pick. 363.   Yet here was a change of tenure,

and it might be, in some cases, a material one to the inter ests of the party, whether the estate was to be held in joint tenancy or tenancy in common. These cases tend strongly to show the views which have been taken by the court of questions of this general character, and confirm us in the opinion that acts of the legislature are not to be set aside as unconstitutional, unless most clearly in conflict with the provisions of the constitution.

We have not thought it necessary to consider particularly one point somewhat discussed upon the argument of the case, viz. whether the legislature had, by the general laws of the Commonwealth in force at the time of passing this resolve, given authority to the courts, or any of them, to grant license to a guardian to sell real estate for the purpose for which this sale was authorized and made. It would seem doubtful whether such sale could have been authorized by the general laws; it being to raise money to pay off a mortgage on other real estate of the ward, and it not appearing that the ward was personally liable for the debt secured by that mortgage. It was a case at least of doubtful authority, and furnished so far a special reason for a particular act. But upon the authority of *Rice* v. *Parkman,* if it were otherwise, the result could not be affected.

Another objection taken to the validity of the conveyance under which the tenants claim is, that William T. Spear was not the legally constituted guardian of Andrew C. Davison. The objection arises from the supposed want of notice of the proceedings in the probate court. No such objection exists here as was found in the cases of *Chase* v. *Hathaway,* 14 Mass. 222, and *Hathaway* v. *Clark,* 5 Pick. 490. Here was due notice of the proceedings before making inquisition; and the only alleged defect in the subsequent proceedings is the want of notice from the probate court of the time when the decree of the court, upon the question on which it had fully heard all the parties, should be entered. We think this should not vacate the decree appointing a guardian. The parties interested should, so far as necessary, give their attendance in court, or take other proper means to be informed as to the time when

34

judgment is to be pronounced in a case pending in court, which has been heard, and only awaits the decision of the judge. In the court of probate, it is even less necessary for the security of a party than in other courts, that the precise time of the entering of judgment should be notified to him, as the party aggrieved may file his appeal after the adjournment of the court; and in case of omission to enter it, through any accident or mistake, the statute gives him the further right to petition this court for leave to enter an appeal out of the prescribed rule in other cases. Whether a resolve of the legislature would be avoidable on this ground, or whether a sale by a guardian *de facto*, and who was authorized to make such sale, by the express recital of his character as guardian in the resolve, would not be good and valid in law to vest the estate in the purchaser, we have not thought necessary to consider; as we are of opinion that Mr. Spear was legally appointed guardian to Davison.

*Demandant nonsuit.*